UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MARIA ENRICHETTA MELZI
CARGNANI,

        Petitioner,

  v.

PEWAG AUSTRIA G.m.b.H., PEWAG
WEISSENFELS HOLDING A.G.,
PEWAG WEISSENFELS
INTERNATIONAL G.m.b.H., and
AGYD PENGG, an individual,

        Respondents.

NO. CIV. S-05-0133 WBS JFM

MEMORANDUM AND ORDER RE:
MOTION TO STRIKE AND MOTION TO
DISMISS

----oo0oo----

        Petitioner Maria Enrichetta Melzi Cargnani ("Petitioner") brought this action to enforce a foreign arbitral award against respondents pursuant to 9 U.S.C. § 201 et seq. Respondents now move to dismiss the action based on lack of personal jurisdiction and forum non conveniens, or in the alternative to stay the action pending the resolution of a matter before the Trieste Court of Appeal in Italy.  Petitioner moves to strike portions of respondents' motion to dismiss and of

1

1  declarations filed therewith.

2  I.   Factual and Procedural Background

3          Respondents Pewag Austria G.m.b.H. ("Pewag Austria"),

4  Pewag Weissenfels Holding A.G. ("Pewag Holding"), and Pewag

5  Weissenfels International G.m.b.H. ("Pewag International"), are

6  corporations organized under the laws of Austria, specializing in

7  the manufacture and sale of high quality chains.  (Petition ¶ 3.)

8  Respondent Agyd Pengg is a citizen of Austria and CEO of Pewag

9  Holding, Pewag International, and Metallwaren Beteiligungs

10 G.m.b.H. (the parent company and majority owner of Pewag

11 Austria).  (Pengg Decl. ¶ 1.)  Petitioner is a resident of Italy.

12  (Petition ¶ 2.)

13         The dispute originates from a contract entered into by

14 the parties on July 13, 1999 ("Agreement"), in which respondents

15 agreed to purchase from petitioner the controlling interest in

16 the three companies (in which petitioner and her brother, Carlo

17 Enrichetta Melzi, were the sole or joint shareholders) in

18 exchange for cash as well as stock ownership in a newly created

19 company.  (Petition ¶ 5; Bartlma Decl. Ex. B at 1-3.)

20         On December 12, 2001, the parties entered into a

21 settlement which clarified their obligations going forward and

22 provided for arbitration in the event of further disputes.  (Id.)

23 ("Settlement").  (Petition ¶ 5.)  Nonetheless, problems continued

24 to arise, and eventually respondents abandoned the transactions

25 provided for in the Agreement.[1]  (Mot. to Dismiss 3.)

26

27         [1]   Respondents asserted that throughout 2002 and 2003,
28 they discovered numerous illegal and fraudulent actions taken by
   petitioner in relation to properties and companies that were part

2

1        Based on this failure of performance, an arbitration

2 was held in Trieste, Italy, pursuant to the provisions of the

3 agreement.  (Petition ¶ 6.)  On September 17, 2003, the

4 arbitrators issued an award in favor of petitioner, in the amount

5 of €9,249,018.08, plus interests and costs of the arbitration.

6 (Petition ¶ 11.)  Respondents timely appealed that award to the

7 Trieste Court of Appeal, wherein they contended that the

8 arbitration award violated the Italian Civil Code, and was thus

9 null and void.  (Bartlma Decl. Ex. B.)  That appeal is currently

10 pending, and is scheduled for a hearing on June 15, 2007.  (Ponti

11 Decl. ¶ 5.)

12        On June 8, 2004, petitioner sought to enforce the

13 arbitration award in the District Civil Court of Graz, Austria.

14 (Pressl Decl. ¶ 8.)  On June 17, 2004, the Austrian District

15 Court ruled that the arbitration award was enforceable.  (Id.)

16 Respondents, however, appealed that ruling to the Austrian

17 Appellate Court, arguing that the appeal pending in the Trieste

18 Court of Appeal rendered the arbitration award without the effect

19 of law.  (Id.)  On March 18, 2005, the Austrian Appellate Court

20 reversed the lower District Court's decision, and suspended

21 enforcement of the arbitration award pending the outcome of the

22 Italian appeal.  (Id. ¶ 9.)

23        On January 21, 2005, petitioner filed with this court a

24 petition seeking to confirm the original enforcement award

25 pursuant to the Convention on the Recognition and Enforcement of

26 Foreign Arbitral Awards, 9 U.S.C. § 207.  Petitioner predicates

27

28 of the transactions contemplated in the agreement.

1  personal jurisdiction over respondents on the fact that a wholly-
2  owned subsidiary, Pewag Inc. ("Pewag America"), a New Jersey
3  corporation, maintains an office in
4  California. (Petition ¶ 7.)

5          Respondents now move to dismiss, arguing that this
6  court does not have personal jurisdiction over respondents and
7  based on the doctrine of forum non conveniens.  In the
8  alternative, respondents request that this court stay the
9  proceedings until the Italian appeal is resolved.  Petitioner
10 moves to strike portions of Mr. Ponti and Mr. Pengg's
11 declarations based on the assertion that the information stated
12 therein lacks proper foundation.  Petitioner additionally moves
13 to strike a portion of the factual recitation in respondents'
14 motion to dismiss, arguing that it lacks relevancy and
15 foundation.

16 II.  <u>Discussion</u>

17      A.  <u>Motion to Strike</u>

18 _____Upon a motion made by a party, the court may order
19 stricken from any pleading any insufficient defense or any
20 redundant, immaterial, impertinent, or scandalous matter.  Fed.
21 R. Civ. P. 12(f).  When ruling on a motion to strike, the court
22 views the challenged pleadings in the light most favorable to the
23 pleader.  <u>See Pillsbury, Madison & Sutro v. Lerner</u>, 31 F.3d 924,
24 928 (9th Cir. 1994).  Motions to strike are not favored and
25 "should not be granted unless it can be shown that no evidence in
26 support of the allegation would be admissible, or those issues
27 could have no possible bearing on the issues in the litigation."
28 <u>Gay-Straight Alliance Network v. Visalia Unified School Dist.</u>,

4

1    262 F. Supp. 2d 1088, 1099 (E.D. Cal. 2001).

2            Petitioner cites a case from the District Court of

3    Arizona for the proposition that a court considering a motion to

4    dismiss may only consider admissible evidence.  Travelers Cas. &

5    Surety Co. v. Telstar Constr. Co., Inc., 252 F. Supp. 2d 917 (D.

6    Ariz 2003).  There the court noted that, because the burden of

7    proving personal jurisdiction falls on the plaintiff, it is clear

8    "that Plaintiffs [sic] affidavits and exhibits submitted in

9    support of the Response to the [Motion to Dismiss] must comply

10   with the Rules of Evidence."  Id. at 923 (emphasis added).

11   Assuming arguendo that respondent bears a similar burden,

12   petitioner's motion to strike must nonetheless be denied.

13            1.   Ponti Declaration

14            Petitioner moves to strike paragraphs two, three, and

15   four of Luca Ponti's declaration, submitted in support of the

16   present motion to dismiss.  These three paragraphs contain a

17   brief overview of the business transactions entered into between

18   petitioner and respondents, as well as the subsequent Settlement

19   between the parties and the ultimate dispute taken to

20   arbitration.  Prior to these paragraphs, Mr. Ponti notes that the

21   facts contained therein "were reported to me by Mr. Pengg."

22   Petitioner therefore asserts that Mr. Ponti lacks personal

23   knowledge of the events described, and that these paragraphs are

24   inadmissible hearsay and lack adequate foundation.

25            Everything stated in these three paragraphs can be

26   verified by additional documents submitted with respondents'

27   motion.  The three paragraphs give merely a brief overview of the

28   factual and procedural history of this case--which are described

                                    5

in much greater detail in respondents' petition to the Italian

courts for review of the arbitration award.  (Bartlmä Ex. B.)

Mr. Ponti undoubtedly had additional sources for the knowledge he

recounts, because, as he notes in the very next paragraph, <u>he</u>

<u>filed the appeal of the arbitration award to the Italian court</u>.

(Ponti Decl. ¶ 5.)  Thus, as counsel for respondents in this

appeal, Mr. Ponti familiarized himself with the facts and history

of the original action by conducting a review of the record

below.  Accordingly, these paragraphs will not be stricken.[2]

### 2.  Pengg Declaration

Petitioner moves to strike paragraphs four, eight, and

twelve, as well as most of paragraphs five and eleven from Agyd

Pengg's declaration.  All of these statements relate to how Pewag

America runs its own operations, separate from the international

Pewag entities.  (Pengg Decl.)  Pengg notes in his declaration

that, "although I am listed as the Secretary of the American

Subsidiary, I have no involvement in the operations of the

company . . . ."  Petitioner therefore argues that because Pengg

doesn't play an active role in the operations of Pewag America,

he has no personal knowledge of how it operates its business.

Mr. Pengg is the CEO of all three international Pewag

entities, and is thus intimately associated with the inner-

workings of these organizations, including the subsidiaries.

_____

[2]    The court notes, moreover, that these three brief
summary paragraphs in Ponti's declaration bear no direct
relevance to respondents' motion, which is founded on a claim of
lack of personal jurisdiction.  Thus the court need not rely on
the declaration for these particular facts--even if the court
were to strike these portions of Mr. Ponti's declaration, it
would not impact its reasoning.

1  Neither party disputes that Pewag America is a subsidiary of

2  Pewag International.  Therefore, Mr. Pengg is in a very good

3  position to speak to how Pewag America operates, <u>particularly</u>

4  with regard to what tasks Pewag America performs on its own,

5  without guidance or assistance from Pewag International.  This is

6  exactly the subject of the statements to which petitioner

7  objects.

8         Merely because Mr. Pengg is not involved in <u>making</u> the

9  day-to-day decisions for Pewag America does not mean he is not

10  familiar with how they are made, or in the very least aware of

11  the fact that they are made by Pewag America, and <u>not</u> Pewag

12  International.[3]  There is ample foundation for Mr. Pengg's

13  statements.  Accordingly, these statements will not be stricken.

14  _____

15  _____      3.   <u>Factual Recitation in Motion to Dismiss</u>

16  _____      Petitioner objects to pages two through seven of the

17  motion to dismiss, which constitutes the entire "Brief Statement

18  of Facts" portion of respondents' motion.  Specifically,

19  petitioner argues that the facts cited lack relevancy and

20  foundation, because 1) the background facts of the parties'

21  original dispute is not relevant to the arbitral award, and 2)

22  the factual recitation "relies heavily on the declarations of

23  Ponti and Pengg."  (Mot. to Strike 4-5.)

24         Pages two through seven merely provide an appropriate

25  contextual background of the facts that led up to the ultimate

26  _____

27         [3]   Petitioner argues inconsistently that Pewag
   International and Pewag America are one and the same entity,
28  while arguing at the same time the CEO of Pewag International
   lacks foundation to speak regarding Pewag America's operations.

1    arbitration in issue.  It is hard to reason that facts regarding

2    a business relationship, and an agreement to engage in business

3    transactions that contained an arbitration clause, are not

4    relevant to an ultimate action to enforce an arbitration award

5    under that exact clause.  Moreover, because Mr. Ponti's and Mr.

6    Pengg's declarations are proper, a factual recitation relying on

7    these declarations is also proper.  Accordingly, these pages will

8    not be stricken from the motion.

9        B.   Motion to Dismiss

10            1.   Legal Standard

11            Federal Rule of Civil Procedure 12(b)(2) governs the

12   dismissal of an action based on lack of personal jurisdiction.

13   On a motion to dismiss, the plaintiff bears the burden of

14   "demonstrat[ing] facts that if true would support jurisdiction

15   over the defendant."  Ballard v. Savage, 65 F.3d 1495, 1498 (9th

16   Cir. 1995) (citation omitted).  "Where not directly controverted,

17   plaintiff's version of the facts is taken as true for the

18   purposes of a 12(b)(2) motion to dismiss."  Doe v. Unocal Corp.,

19   248 F.3d 915, 922 (9th Cir. 2001) (citing AT & T v. Compagnie

20   Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996)).

21            A court's exercise of personal jurisdiction "must

22   comport with the state long-arm statute, and with the

23   constitutional requirements of due process."  Omeluk v. Langsten

24   Slip & Batbyggeri A/S, 52 F.3d 267, 269 (9th Cir. 1995).  Given

25   that California's long-arm statute extends jurisdiction to the

26   limits imposed by the Due Process Clause, the only question is

27   whether the exercise of jurisdiction is constitutionally

28   permissible.  Cal. Code Civ. Proc. § 410.10; Ziegler v. Indian

8

1  River County, 64 F.3d 470, 473 (9th Cir. 1995).

2          The Ninth Circuit has made clear that, although Chapter
3  II of the Federal Arbitration Act, 9 U.S.C. §§ 201-208, provides
4  subject matter jurisdiction for District Courts, courts must
5  nonetheless have personal jurisdiction over a defendant--the
6  constitutional due process standards remain the same.  Glencore
7  Grain Rotterdam B.V. v. Shivnath Rai Harnarian Co., 284 F.3d
8  1114, 1122 (9th Cir. 2002) ("[I]n suits to confirm a foreign
9  arbitral award under the Convention, due process requires that
10 the district court have jurisdiction over the defendant . . .
11 .").

12         Due process requires that a nonresident defendant have
13 certain "minimum contacts" with the forum state so that the
14 exercise of jurisdiction "does not offend traditional notions of
15 fair play and substantial justice."  Int'l Shoe Co. v.
16 Washington, 326 U.S. 310, 316 (1945).  Applying the minimum
17 contacts analysis, a court may obtain either specific or general
18 jurisdiction over a defendant.  Unocal Corp., 248 F.3d at 923.

19         2.   Specific Jurisdiction
20 _____   To establish specific jurisdiction, the plaintiff must
21 show that: (1) defendant purposefully availed itself of the
22 privilege of conducting activities in California, thereby
23 invoking the benefits and protections of its laws; (2)
24 plaintiff's claims arise out of defendant's California-related
25 activities; and (3) the exercise of jurisdiction would be
26 reasonable.  Ziegler, 64 F.3d at 473.  In this case, the court
27 need look no further than the second prong.  In assessing whether
28 a claim arises out of forum-related activities, "courts apply a

1   'but for' test."  Unocal Corp., 248 F.3d at 924 (citing Ballard

2   v. Savage, 65 F.3d 1495,  1500 (9th Cir. 1995).  "[T]he Court

3   considers whether [petitioner's] claims would have arisen but for

4   [respondents'] contacts with California."  Id.

5           Importantly, petitioner does not assert that the claims

6   against respondents for violation of the Agreement had anything

7   to do with respondent's California-related activities.  Indeed,

8   the basic subject matter of the Agreement related to the

9   purchase, by Austrian entities, of three companies located in

10  Italy and owned by Italian citizens.  Furthermore, both the

11  contract and the subsequent settlement agreement were negotiated

12  and signed in, and under the laws of, Italy.  Because the claims

13  in this particular dispute have no relation to respondent's

14  asserted California contacts, the court does not have specific

15  jurisdiction over respondents, and it need not address

16  defendants' purposeful availment of California's laws or

17  reasonableness of asserting jurisdiction.[4]

18  ///

19           3.   General Jurisdiction Based on California Contacts

20           General jurisdiction exists when a defendant is

21  domiciled in the forum state or has engaged in activities there

22  that are "substantial" or "continuous and systematic."

23  Panavision Int'l v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1988)

24  (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466

25  _____

26       [4]    The court notes, however, that the reasonableness
     inquiry for specific jurisdiction parallels the same inquiry into
     reasonableness in assessing general jurisdiction.  Thus, as
27   discussed in Section II(B)(3)(b) of this order, this factor in
     evaluating specific jurisdiction would also likely counsel
28   against the existence jurisdiction.

                              10

U.S. 408, 414-16 (1984)).  "The Supreme Court has bifurcated this
due process determination into two inquiries, requiring, first
that the [respondents] have the requisite contacts with the forum
state to render it subject to the forum's jurisdiction, and
second, that the assertion of jurisdiction be reasonable."  Amoco
Egypt Oil Co. v. Leonis Navigation Co., Inc., 1 F.3d 848, 851
(9th Cir. 1993).

a.   Minimum Contacts

It is undisputed in this case that respondents have no
direct contacts with California.[5]  (Petition ¶ 7; Mot. to Dismiss
7:20-24.)  The only asserted connection to the forum state is
through respondents' wholly-owned subsidiary, Pewag America,
which has an office in California.  (Petition ¶ 7.)  In a case
such as this, where "the [respondents'] alleged contacts are
through its corporate subsidiaries, the Court must engage in a
preliminary inquiry to determine whether the subsidiaries
contacts are properly attributed to the [respondents]."  Unocal
Corp., 248 F.3d at 925.  The mere "existence of a relationship
between a parent company and its subsidiaries is not sufficient
to establish personal jurisdiction over the parent on the basis
of the subsidiaries' minimum contacts with the forum."  Id.
(citing Transure, Inc. v. Marsh & McLennan, Inc., 766 F.2d 1297,

---

[5]    Petitioner does additionally contend, upon information
and belief, that respondent Agyd Pengg travels to California to
participate in the business of Pewag.  This assertion, however,
is directly contradicted by the Declaration of Agyd Pengg,
submitted in support of this motion, and petitioner offers no
evidence to support its contention.  (Pengg Decl. ¶ 10) ("I have
not traveled to California on behalf of or in connection with the
business of the American Subsidiary.  In fact, I have not
traveled to California in the past 10 years.")

1299 (9th Cir. 1985)).  In addressing corporate separateness, the
Supreme Court has employed the principle that "a parent
corporation may be directly involved in the activities of its
subsidiaries without incurring liability so long as that
involvement is 'consistent with the parent's investor status.'"
Id. at 926 (citing United States v. Bestfoods, 524 U.S. 51, 72
(1998)).

However, "if the parent and subsidiary are not really
separate entities, or one acts as an agent of the other, the
local subsidiary's contacts with the forum maybe be imputed to
the foreign parent corporation." Id. (citing El-Fadl v. Cent.
Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996)).  In
particular, the Ninth Circuit has noted two typical instances
where a subsidiary's contacts will be imputed to the parent: 1)
when the subsidiary is an "alter ego" of the parent, and 2) when
the subsidiary is acting as an "agent" of the parent. Id.; see
also Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175
(9th Cir. 1980).

i.  Alter Ego

To demonstrate that a subsidiary is an "alter ego" such
that its contacts with a forum should be imputed to a parent
(also known as "merger"), the plaintiff must show "(1) that there
is such unity of interest and ownership that the separate
personalities [of the two corporations] no longer exist and (2)
that failure to disregard [their separate identities] would
result in fraud or injustice." AT & T, 94 F.3d at 591.
"Underlying both of these factors is a general presumption in
favor of respecting the corporate entity." Calvert v. Huckins,

12

1   875 F. Supp. 674, 678 (E.D. Cal. 1995).  Courts have interpreted

2   this first prong as an inquiry into whether or not the parent

3   controls the internal affairs and day-to-day operations of the

4   subsidiary so as to "render the latter the mere instrumentality

5   of the former."  Unocal Corp., 248 F.3d at 926.

6        In this case, petitioner has failed to demonstrate that

7   respondents exercise sufficient control over Pewag America so as

8   to create a prima facie case of alter ego jurisdiction.  The only

9   contentions petitioner offers in support of this proposition are:

10  1) that "Pewag International uses Pewag [America] to conduct

11  business on its behalf in this district and elsewhere" and that

12  their interests are thus "closely aligned;" 2) respondent Agyd

13  Pengg is the Corporate Secretary of Pewag America; and 3) Pewag

14  American and Pewag International's web-sites demonstrate

15  sufficient interconnectivity.  (Petition ¶¶ 7-8, 10; Opp'n to

16  Mot. to Dismiss 5-6.)

17        However, it is undisputed that Pewag America an

18  independently operated manufacturing and distribution center.

19  (Pengg Decl. ¶ 3.)  It maintains its own payroll, marketing,

20  distribution and manufacturing facilities.  (Id. ¶ 4.)  Moreover,

21  it hires is own managers and employees, and makes all of its day-

22  to-day financial decisions based on its own needs and business

23  strategies.  (Id. ¶ 5.)  Indeed, while Pewag America does receive

24  some of its merchandise, specifications, and branding information

25  from Pewag International, it also conducts business with a

26  completely unrelated Chinese manufacturer.  (Id.)

27        Although petitioner is correct in pointing out that

28  respondent Pengg is a Corporate Secretary for the American

13

subsidiary, he has no involvement with the running of the company, and has never even traveled to California on business. (Id. ¶ 10.)  It is well established that mere presence on the board of a subsidiary by a director of the parent is insufficient to make the subsidiary an "alter ego." Kramer, 628 F.2d at 1177. Plaintiffs have submitted no evidence to show that respondents ever controlled the Board or the internal day-to-day affairs of Pewag America, and thus Pewag America is not an alter ego of respondent companies, for the purposes of establishing personal jurisdiction.

With regard to the web-sites of Pewag International and its American subsidiary, petitioner observes that Pewag America's website boasts of "a company with 275 years of experience," when in fact it is Pewag International that has been in existence that long.  Petitioner also notes that many of the product information pages on the American subsidiary's website contain a German language description.  Finally, petitioner notes that Pewag International's website lists Pewag America's contact information, and contains many similar pictures and product information pages as its American counterpart.

However, all of these superficial indications of the interrelated nature of the companies are precisely what would be expected given that Pewag America is a subsidiary of Pewag International.  Respondents do not deny that they own the American subsidiary and that Pewag America sells some of its products.  Therefore, some overlap is inevitable with regard images, product descriptions, and general information. Significantly, none of the information on the web-sites cited by

14

petitioner indicates that Pewag International exercises any

control over the operations or decision making of its American

subsidiary.  All that the web-sites reveal is that the two

companies are related, a fact which respondents do not dispute.[6]

ii.  Agency

Alternatively, a subsidiary's contacts can be

attributed to the parent when it performs services that are

sufficiently important to the foreign corporation that if it did

not have a representative to perform them, the corporation's own

officials would undertake to perform substantially similar

services." Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1405

(9th Cir. 1994) (quoting Wells Fargo & Co. v. Wells Fargo Express

Co., 556 F.2d 406, 423 (9th Cir. 1977)).  Courts have permitted

such imputation of contacts when the subsidiary is engaged in

activities that, "but for the existence of the subsidiary, the

parent would have to undertake itself." Id. at 1405 n.9.  The

fundamental question is whether the subsidiary's presence

"substitutes for the presence of the parent." Unocal Corp., 248

F.3d at 929 (quoting Gallagher v. Mazda Motor of Am., Inc., 781

F. Supp. 1079, 1084 (E.D. Pa. 1992)).

---

[6]     Petitioner cites Anderson v. Dassault Aviation, 361
F.3d 449, 453-55 (9th Cir. 2004), for the proposition that web-
site content can establish a prima facie case of alter ego.  In
Anderson, however, the court noted that the parent had
"sufficient contacts with Arkansas to support an Arkansas court's
assertion of personal jurisdiction over it whether or not [the
subsidiary] is its alter ego." Id. at 453.  This was because the
website created by the parent corporation (a jet manufacturing
company) revealed that the subsidiary was "the main completion
center for all Falcon jets worldwide."  Thus, the subsidiary
played an integral and necessary part in the parent's operations.
No such relationship is even hinted at in this case, as Pewag
America and Pewag International operate independently.

1    Notably, some courts have additionally held that in
2  order for the agency test to be satisfied, the parent must
3  exercise sufficient internal or day-to-day control over the
4  subsidiary as in the alter ego test.  Kramer, 628 F.2d at 1177-
5  78; Unocal, 248 F.3d at 926 ("An alter ego or agency relationship
6  is typified by parental control of the subsidiary's internal
7  affairs or daily operations."); but see Modesto City Schools v.
8  Riso Kagaku Corp., 157 F. Supp. 2d 1128, 1132-34 (E.D. Cal. 2001)
9  (arguing that the correct contextual reading of the agency test
10  in Unocal reveals that a parent's day-to-day control over the
11  subsidiary "is not the sine qua non of the general agency test").
12    The court need not opine as to the significance of
13  parental control over a subsidiary for the agency test, however,
14  for in this instance it is clear that petitioner has failed to
15  carry the burden.  There are no facts alleged to indicate that,
16  but for the existence of Pewag America, the respondent companies
17  would have to undertake the activities in which the subsidiary
18  engages--Pewag International is completely self-sufficient and
19  performs on its own every task needed to do business.  Other than
20  the assertion of a parent-subsidiary relationship, petitioner has
21  submitted no evidence regarding the interrelation of the
22  respondents' and Pewag America's businesses.  Because there is a
23  presumption in favor of respecting the separateness of the
24  corporate entities, petitioner's failure to evince an agency
25  relationship means that personal jurisdiction over respondents
26  can not be predicated on these grounds.
27    B.   Reasonableness
28    Even assuming that sufficient minimum contacts existed,

16

this court must still inquire into the reasonableness of
asserting jurisdiction over respondents.  <u>Glencore</u>, 284 F.3d at
1125 (citing <u>Asahi Metal Indus. Co. v. Superior Court</u>, 480 U.S.
102, 113 (1987)).  In assessing the reasonableness of exercising
jurisdiction, the court must consider seven factors in its
analysis: "1) the extent of a defendant's purposeful interjection
into the forum state's affairs; 2) the burden on the defendant of
defending in the forum; 3) the extent of conflict with the
sovereignty of the defendant's home state; 4) the forum state's
interest in adjudicating the dispute; 5) the most efficient
judicial resolution of the controversy; 6) the importance of the
forum to the plaintiff's interests in convenient and effective
relief; and 7) the existence of an alternative forum."  <u>Myers v.
Bennett Law Offices</u>, 238 F.3d 1068, 1075 (9th Cir. 2001) (citing
<u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462 (1985)).

     1) With regard to respondents' purposeful interjection
into the forum state's affairs, petitioner does not dispute that
respondents do not direct sales to the forum state, nor do they
advertise or market, hire or manufacture in California.  (Pengg
Decl. ¶ 6.)  Nor is there any evidence that respondent Pengg has
ever traveled to California on business.  (<u>Id.</u> ¶ 10.)
Respondents' singular connection with California is their wholly
owned subsidiary.  Indeed, "[t]his factor parallels the question
of minimum contacts" and thus, for the reasons discussed above,
the contacts of Pewag America can not be imputed to its parent.
<u>Amoco Egypt</u>, 1 F.3d 852, which counsels against a finding of
personal jurisdiction over respondents.

     2) The burden on respondents, and indeed on petitioner

1  as well, would be great were they forced to litigate this issue

2  in California.  Respondents are all located in Austria, and all

3  potential witnesses and relevant evidence is similarly located in

4  Austria and Italy.  Moreover, respondents own no property in

5  California, and have no employees or persons in California who

6  are authorized to act on its behalf.[7]  Petitioner contends that

7  this case will not involve many witnesses or substantial

8  evidence.  (Opp'n to Mot. to Dismiss 12.)  Nonetheless, all

9  evidence and witnesses which <u>are</u> required are all located a

10 significant distance from the forum, which further argues against

11 asserting jurisdiction.  <u>See</u> <u>Asahi Metal Indus. Co., Ltd. v.</u>

12 <u>Superior Court of CA, Solano County</u>. 480 U.S. 102, 114 (1987)

13 ("The unique burdens placed upon one who must defend oneself in a

14 foreign legal system should have significant weight in assessing

15 the reasonableness of stretching the long arm of personal

16 jurisdiction over national borders."); <u>see</u> <u>also</u> <u>Glencore</u>, 284

17 F.3d at 1114 (noting a substantial burden because "its potential

18 witnesses and evidence are likely half a world away").

19        3) As to the potential conflict with Austrian

20 sovereignty, as a general rule this factor tends to counsel

21 against the reasonableness of personal jurisdiction over a party

22 from a foreign country.  <u>Glencore</u>, 284 F.3d at 1126 (citing <u>Amoco</u>

23 <u>Egypt</u>, 1 F.3d at 852)("Where, as here, the defendant is from a

24 foreign nation rather than another state, the sovereignty barrier

25

26        [7]    It is undisputed that Pewag America was not a party to
   the arbitration or underlying agreements in this case.  Thus,
27 regardless of the interconnectedness of the parent-subsidiary
   relationship, Pewag America is not authorized to act on behalf of
28 respondents nor is it liable for any arbitration award.

1  is high and undermines the reasonableness of personal

2  jurisdiction.").

3      4) California appears to have no cognizable interest in

4  adjudicating the matter.  The dispute at hand involves Austrian

5  and Italian parties, executing in Italy a contract governed by

6  Italian law, which provided for arbitration in Italy in the event

7  of a dispute.  Neither party has a direct presence in California,

8  nor any property in the forum state which might be relevant to

9  issuance of an award.  See e.g. Asahi, 480 U.S. at 114 (1987)

10 ("Because the plaintiff is not a California resident,

11 California's legitimate interests in the dispute have

12 considerably diminished.").

13     5) Determining the most efficient resolution "involves

14 a comparison of alternative forums."  Amoco Egypt, 1 F.3d at 852.

15 "The site where the injury occurred and where evidence is located

16 usually will be the most efficient forum."  Pac. Atl. Trading Co.

17 v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985).  In

18 this case, as mentioned above, the injury occurred between

19 parties in Austria and Italy, under the province of Italian law,

20 and as such all witness and evidence are already located in that

21 forum.  Moreover, because petitioner's request would require this

22 court to inquire into the validity under Italian Civil Code of an

23 arbitration award issued by the Italian courts, the application

24 of unfamiliar Italian law by this court would further undermine

25 the efficiency of the proceeding.

26     6) The sixth factor evaluates petitioner's interest in

27 the litigation being brought before this particular court.  Even

28 this factor seems to only weigh against the reasonableness of

1  petitioner's assertion of jurisdiction over respondents.  As

2  noted, petitioner is a resident of Italy, the harm occurred in

3  Italy, and all relevant witnesses and evidence are similarly in

4  Italy or Austria.  Petitioner has not asserted any connection to

5  California and has given no indication of its interest in

6  litigating the matter here.  Indeed, the only motive of which

7  this court can conceive for bringing the suit in California (or

8  any United States court of federal jurisdiction) is to avoid the

9  impact of the proceeding already underway in Italy, which is

10  insufficient to tilt the balance in petitioner's favor.

11          7) The final factor requires petitioner to demonstrate

12  the "unavailability of an alternative forum."  Amoco Egypt, 1

13  F.3d at 853.  Undoubtedly, petitioner cannot meet this burden.

14  First, the original arbitration, provided for by the agreement

15  between the parties, occurred in Italian courts, applying Italian

16  law.  An appeal of this action is still pending, and petitioner

17  has shown no reason why that forum, agreed to by the parties as

18  the appropriate forum for resolving disputes, is no longer a

19  viable option.  Moreover, the enforcement action in Austrian

20  court (presently stayed awaiting the outcome of the Italian

21  appeal) also provides a convenient alternative forum, as

22  respondents are all located within that forum.  Overall, each of

23  the seven Burger King factors counsel that this courts assertion

24  of personal jurisdiction over respondents in this case would not

25  be reasonable.

26          4.   General Jurisdiction Based on National Contacts

27          Petitioner argues that, even if general jurisdiction is

28  not found based on respondents' California contacts, Rule 4(k)(2)

20

provides for personal jurisdiction based on respondents' national contacts.[8]  General jurisdiction based on national contacts requires that: 1) the cause of action arise under federal law; 2) the defendant not be subject to the personal jurisdiction of any state court of general jurisdiction; and 3) exercising jurisdiction comports with due process.  <u>Glencore</u>, 284 F.3d at 1126.  Thus, just like analyzing respondents' California contacts, the court must consider the minimum national contacts and reasonableness of asserting jurisdiction.

Petitioner does not cite a single specific fact regarding the nature or scope of respondents' national contacts. Instead, petitioner merely states that "an arbitral enforcement action in this forum would [not] be so unfair or inconvenient as to infringe [respondents'] liberty interests."  This is insufficient to satisfy petitioner's burden of demonstrating personal jurisdiction--petitioner must demonstrate a prima facie case based on some purported national contacts.  <u>See</u> <u>Ballard</u>, 65 F.3d at 1498.

As discussed above, and conceded by petitioner, respondents have no direct contacts with the United States--their only purported contact is through their wholly-owned subsidiary. However, for all of the reasons noted in the minimum contacts discussion above, the American subsidiary's contacts are not

---

[8]      Federal Rule of Civil Procedure 4(k)(2) provides that, "If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state."

1 imputed to respondents.  Even if they were, Rule 4(k)(2) would be

2 inappropriate, because jurisdiction founded on national contacts

3 requires that defendant not be subject to jurisdiction in <u>any</u>

4 state court of general jurisdiction.  <u>Unocal</u>, 248 F.3d at 922-23

5 ("If [the] subsidiaries' contacts were imputed to [the parent],

6 however, several states would have jurisdiction over [the

7 parent], and Rule 4(k)(2) would not apply.").  If the

8 subsidiaries contacts were to be attributed to the parent, then

9 general jurisdiction would exist in California, not nationally,

10 based on contacts with the state.  As the discussion above

11 illustrates, however, Pewag America's contacts are <u>not</u> attributed

12 to Pewag International--thus Pewag International has no national

13 contacts.  Therefore, personal jurisdiction over respondents

14 cannot be based on national contacts.[9]

15                    5.   <u>Quasi-in-rem Jurisdiction</u>

16          Petitioner finally asserts that respondents are subject

17 to <u>quasi in rem</u> jurisdiction based on their ownership of property

18 and/or assets in California.  In some cases the Supreme Court has

19 implied that, even without personal jurisdiction, a court may

20 nonetheless attach a party's in-state property to enforce a

21 previous judgment.  <u>See</u> <u>Shaffer v. Heitner</u>, 433 U.S. 186, 210

22 n.36 (1977) ("Once it has been determined by a court of competent

23 jurisdiction that the defendant is a debtor of the plaintiff,

24 there would seem to be no unfairness in allowing an action to

25 realize on that debt in a State where the defendant has property,

26

27          [9]    Even if the court found sufficient national contacts to
support the assertion of personal jurisdiction, a reasonableness
inquiry would, for the same reasons discussed in Section
28 II(B)(3)(b), mandate a finding of no personal jurisdiction.

whether or not that State would have jurisdiction to determine the existence of the debt as an original matter."); see also Carolina Power & Light Co. v. Uranex, 451 F. Supp. 1044, 1049 (N.D. Cal. 1977) (finding no personal jurisdiction, but allowing plaintiff to attach defendant's California property as security pending arbitration between parties in New York).[10]

Regardless of the breadth of quasi in rem jurisdiction, as explained by the court in Glencore, the "sine qua non of basing jurisdiction on a defendant's assets in the forum is the identification of some asset."  284 F.3d at 1127.  As in Glencore, petitioner here has failed to identify any property owned by respondents in California.  The complaint contains no allegations of any property owned by respondents and located in California.  The Newcastle, California, office belongs to the American subsidiary, not to respondents, and petitioner does not cite any other specific asset which could be attached.

The only evidence petitioner offers regarding possible California assets is a singular unsubstantiated assertion that respondents "have property and assets in California based upon money owing from the American subsidiary with a primary location in Newcastle, California."  (Opp'n to Mot. to Dismiss 9.)  This is insufficient to satisfy petitioner's burden.  See Glencore,

---

[10]    Notably, the only authority cited by petitioner where a court predicated jurisdiction based on quasi in rem jurisdiction was an unpublished case from the Southern District of New York. CME Media Enters. B.V. v. Zelezny, 2001 WL 1035138, *5 (S.D.N.Y. September 10, 2001).  In that case, however, the court did not in fact determine that it had personal jurisdiction over defendant, but merely that it had the power to attach defendant's property present in the state.  Id. (confirming an arbitration award and allowing attachment "to the extent of $0.05.")

1  284 F.3d at 1128 ("Indeed, the best [plaintiff] can say is that

2  it believes in good faith that [defendant] has or will have

3  assets located in the forum.  This is simply not enough."); H.

4  Ray Baker, Inc. v. Assoc. Banking Corp., 592 F.2d 550, 552 (9th

5  Cir. 1979) (citing Shaffer, 433 U.S. 185) ("The presence of

6  assets in California is a relevant contact, though not one that

7  is sufficient by itself to confer jurisdiction.").  Accordingly,

8  petitioner has failed to make out a prima facie case of quasi in

9  rem jurisdiction.

10              6.   Request for Jurisdictional Discovery

11              Petitioner requests that, if this court finds she has

12  not satisfied her burden of demonstrating facts sufficient to

13  establish jurisdiction over defendant, she be entitled to

14  jurisdictional discovery to gather further evidence.  Discovery

15  "should be granted where pertinent facts bearing on the question

16  of jurisdiction are controverted . . . or where a more

17  satisfactory showing of the facts is necessary." Wells Fargo &

18  Co. v. Wells Fargo Exp. Co., 556 F.2d 406, 430 n.24 (9th Cir.

19  1977).  However, a refusal to grant such discovery "is not an

20  abuse of discretion when it is clear that further discovery would

21  not demonstrate facts sufficient to constitute a basis for

22  jurisdiction. Id. (citing Budde v. Ling-Temco-Vought, Inc., 511

23  F.2d 1033, 1035 (10th Cir. 1975).

24              In this case, petitioner's attempt to establish

25  personal jurisdiction over respondents is not merely lacking in

26  evidence--petitioner does not even have any idea of what sort of

27  evidence jurisdictional discovery might uncover.  It is

28  undisputed that the solitary contact with California is an office

24

owned and run by the American subsidiary, and at oral argument petitioner was unable to indicate what, if any, evidence might be discovered to connect the actions of that office to Pewag International.  The only evidence petitioner suggests might be found are records of accounts receivable, for chains purchased by Pewag America from Pewag International.  This, petitioner contends, might be sufficient for quasi-in-rem jurisdiction.

First, as the court has already explained, quasi in rem jurisdiction is not a means of acquiring jurisdiction over a party, but merely a means of attaching property.  Second, it is not even clear that such a tenuous financial connection is sufficient to establish quasi in rem jurisdiction.  The only case petitioner cites for this proposition is Carolina Power & Light Co. v. Uranex, 451 F.Supp. 1044 (C.D. Cal. 1977).  However, while the court in that case did postpone vacating an attachment of an $85 million debt, owed by an instate debtor corporation to a corporation out-of-state, the court also made clear that in order to be "constitutionally permissible," the facts must "show that . . . the attaching jurisdiction is not an inconvenient arena for defendant to litigate the limited issues arising from the attachment."  Id. at 1050.  In that case, the "[the out-of-state corporation] had agreed to litigate in California any disputes that might arise in its dealings with [the instate debtor]."

By contrast, as already explained in detail in this order's consideration of the reasonableness of asserting personal jurisdiction over respondents, the inconvenience to respondents is great.  Overall, petitioner's assertion of personal jurisdiction over respondents seems based on mere assertion, and

25

1 neither this court, nor petitioner for that matter, can foresee
2 any what substantial evidence might be uncovered by granting
3 jurisdictional discovery.  <u>Terracom v. Valley Nat. Bank</u>, 49 F.3d
4 555, 562 (9th Cir. 1995) (citing <u>Rich v. KIS Cal., Inc.</u>, 121
5 F.R.D. 254, 259 (M.D.N.C. 1988)) ("[W]here a plaintiff's claim of
6 personal jurisdiction appears to be both attenuated and based on
7 bare allegations in the face of specific denials made by
8 defendants, the court need not permit even limited discovery . .
9 . .").  Discovery will not cure this constitutional deficit.
10 Accordingly, the court will deny petitioner's request for
11 jurisdictional discovery.

12        IT IS THEREFORE ORDERED that petitioner's motion to
13 strike be, and the same hereby is, DENIED.

14        IT IS FURTHER ORDERED that respondents' motion to
15 dismiss be, and the same hereby is, GRANTED.

16 DATED:  February 2, 2007

17

18                              WILLIAM B. SHUBB
                                UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

26